Justice Ginsburg,
with whom Justice Scalia and Justice Breyer join, concurring.
The driving objective of the Hague Convention on the Civil Aspects of International Child Abduction (Convention) is to facilitate custody adjudications, promptly and exclusively, in the place where the child habitually resides. See Convention, Arts. 1, 3, Oct. 25,1980, T. I. A. S. No. 11670, S. Treaty Doc. No. 99-11, p. 7 (Treaty Doc.). To that end, the Convention instructs Contracting States to use “the most expeditious procedures available” to secure the return of a child wrongfully removed or retained away from her place of habitual residence. Art. 2, ibid.) see Art. 11, id., at 9 (indicating six weeks as the target time for decision of a return-order petition); Hague Conference on Private International Law, Guide to Good Practice Under the Hague Convention of 25 October 1980 on the Civil Aspects of International Child Abduction, Part I-Central Authority Practice, § 1.5.1, p. 19 (2003) (Guide to Good Practice) (“Expeditious procedures are *181 essential at all stages of the Convention process.”)- While “[the] obligation to process return applications expeditiously ... extends to appeal procedures,” id., Part IV-Enforcement, §2.2, ¶51, at 13 (2010), the Convention does not prescribe modes of, or timeframes for, appellate review of first instance decisions. It therefore rests with each Contracting State to ensure that appeals proceed with dispatch.
Although alert to the premium the Convention places on prompt return, see 42 U. S. C. § 11601(a)(4), Congress did not specifically address appeal proceedings in the legislation implementing the Convention. The case before us illustrates the protraction likely to ensue when the finality of a return order is left in limbo.
Upon determining that the daughter of Jeffrey Chafin and Lynne Chafin resided in Scotland, the District Court denied Mr. Chafin’s request for a stay pending appeal, and authorized the child’s immediate departure for Scotland. The Eleventh Circuit, viewing the matter as a fait accompli, dismissed the appeal filed by Mr. Chafin as moot.[1] As the Court’s opinion explains, the Eleventh Circuit erred in holding that the child’s removal to Scotland rendered further adjudication in the United States meaningless. Reversal of the District Court’s return order, I agree, could provide *182 Mr. Chafin with meaningful relief. A determination that the child’s habitual residence was Alabama, not Scotland, would open the way for an order directing Ms. Chafin to “re-return” the child to the United States and for Mr. Chafin to seek a custody adjudication in an Alabama state court.[2] But that prospect is unsettling. “[Sjhuttling children back and forth between parents and across international borders may be detrimental to those children,” ante, at 178, whose welfare led the Contracting States to draw up the Convention, see 1980 Conference de La Haye de droit international privé, Enlevement d’enfants, E. Pérez-Vera, Explanatory Report ¶23, in 3 Actes et Documents de la Quatorziéme session, p. 431 (1982). And the advent of rival custody proceedings in Scotland and Alabama is just what the Convention aimed to stave off.
This case highlights the need for both speed and certainty in Convention decisionmaking. Most Contracting States permit challenges to first instance return orders. See Guide to Good Practice, Part IV-Enfor cement, §2.3, ¶57, at 14. How might appellate review proceed consistent with the Convention’s emphasis on expedition? According to a Federal Judicial Center guide, “[ejxpedited procedures for briefing and handling of [return-order] appeals have become common in most circuits.” J. Garbolino, The 1980 Hague Convention on the Civil Aspects of International Child Ab *183 duction: A Guide for Judges 116 (2012).[3] . As an example, the guide describes Charalambous v. Charalambous, 627 F. 3d 462 (CA1 2010) (per curiam), in which the Court of Appeals stayed a return order, expedited the appeal, and issued a final judgment affirming the return order 57 days after its entry. Once appellate review established the finality of the return order, custody could be litigated in the child’s place of habitual residence with no risk of a rival proceeding elsewhere.
But as the Court indicates, stays, even of short duration, should not be granted “as a matter of course,” for they inevitably entail loss of “precious months when [the child] could have been readjusting to life in her country of habitual residence.” Ante, at 178; see Tr. of Oral Arg. 39. See also DL v. EL, [2013] EWHC (Fam.) 49, ¶38 (Judgt. of Jan. 17) (“[Children] find themselves in a sort of Hague triangle limbo,, marooned in a jurisdiction from which their return has been ordered but becalmed by extended uncertainty whether they will in the event go or stay.”). Where no stay is ordered, the risk of a two-front battle over custody will remain real. See supra, at 181-182. See also Larbie v. Larbie, 690 F. 3d 295 (CA5 2012) (vacating return order following appeal in which no stay was sought).[4]
Amicus Centre for Family Law and Policy calls our attention to the management of Convention hearings and appeals in England and Wales and suggests that procedures there may be instructive. See Brief for Centre for Family Law *184 and Policy 22-24 (Centre Brief). To pursue an appeal from a return order in those domains, leave must be obtained from the first instance judge or the Court of Appeal. Family Procedure Rules 2010, Rule 30.3 (Eng. and Wales). Leave will be granted only where “the appeal would have a real prospect of success; or .. . there is some other compelling reason why the appeal should be heard.” Ibid. Although an appeal does not trigger an automatic stay, see Rule 30.8, if leave to appeal is granted, we are informed, a stay is ordinarily ordered by the court that granted leave. Centre Brief 23; Guide to Good Practice, Part IV-Enforcement, §3.3, ¶74, at 19-20, n. 111. Appeals are then fast tracked with a target of six weeks for disposition. Centre Brief 24. See also DL v. EL, [2013] EWHC 49, ¶¶42-43 (describing the English practice and observing that “[t]he whole process is . . . very swift, and the resultant period of delay and uncertainty much curtailed by comparison with [the United States]”).
By rendering a return order effectively final absent leave to appeal, the rules governing Convention proceedings in England and Wales aim for speedy implementation without turning away appellants whose pleas may have merit. And by providing for stays when an appeal is well founded, the system reduces the risk of rival custody proceedings. Congressional action would be necessary if return-order appeals are not to be available in U. S. courts as a matter of right, but legislation requiring leave to appeal would not be entirely novel. See 28 U. S. C. § 2253(c) (absent a certificate of appealability from a circuit justice or judge, an appeal may not be taken from the final decision of a district judge in a habeas corpus proceeding or a proceeding under § 2255); cf. Guide to Good Practice, Part IV-Enforcement, §2.5, at 16 (suggesting that, to promote expedition, Contracting States might consider a requirement of leave to appeal); id., Part II-Implementing Measures, §6.6, at 37 (2003) (measures to promote speed within the appeals process include “limiting *185 the time for appeal from an adverse decision [and] requiring permission for appeal” (footnote omitted)).
Lynne Chafin filed her petition for a return order in May 2011. E. C. was then four years old. E. C. is now six and uncertainty still lingers about the proper forum for adjudication of her parents’ custody dispute. Protraction so marked is hardly consonant with the Convention’s objectives. On remand, the Court rightly instructs, the Court of Appeals should decide the case “as expeditiously as possible,” ante, at 179. For future cases, rulemakers and legislators might pay sustained attention to the means by which the United States can best serve the Convention’s aims: “to secure the prompt return of children wrongfully removed to or retained in” this Nation; and “to ensure that rights of custody . . . under the law of one Contracting State are effectively respected in the other Contracting States.” Art. 1, Treaty Doc., at 7.

 The Court of Appeals instructed the District Court to vacate the return order, thus leaving the child’s habitual residence undetermined. The Convention envisions an adjudication of habitual residence by the return forum so that the forum abroad may proceed, immediately, to the adjudication of custody. See Convention, Arts. 1, 16, 19, Treaty Doc., at 7, 10, 11. See also DL v. EL, [2013] EWHC (Fam.) 49, ¶36 (Judgt. of Jan. 17) (“[T]he objective of Hague is the child’s prompt return to the country of the child’s habitual residence so that that country’s courts can determine welfare issues.”); Silberman, Interpreting the Hague Abduction Convention: In Search of a Global Jurisprudence, 38 U. C. D. L. Rev. 1049, 1054 (2005) (typing the “return” remedy as “provisional,” because “proceedings on the merits of the custody dispute are contemplated in the State of the child’s habitual residence once the child is returned there” (internal quotation marks omitted)).

 As the Court observes, ante, at 174, n. 1, a judge of the Family Division of the High Court of Justice of England and Wales recently concluded that “[t]he concept of automatic re-return of a child in response to the overturn of [a] Hague order pursuant to which [the child] came [to England] is unsupported by law or principle, and would ... be deeply inimical to [the child’s] best interests.” DL v. EL, [2013] EWHC 49, V59(e). If Mr. Chafin were able to secure a reversal of the District Court’s return order, the Scottish court adjudicating the custody dispute might similarly conclude that the child should not be re-returned to Alabama, notwithstanding any U. S. court order to the contrary, and that jurisdiction over her welfare should remain with the Scottish court.

 For the federal courts, the Advisory Committees on Federal Rules of Civil and Appellate Procedures might consider whether uniform rules for expediting Convention proceedings are in order. Cf. ante, at 179 (noting that “[clases in American courts often take over two years from filing to resolution”).

 The Larbie litigation, known by another name in the English courts, illustrates that the risk of rival custody proceedings, and conflicting judgments, is hardly theoretical. Compare Larbie, 690 F. 3d 295, with DL v. EL, [2013] EWHC 49.